**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | |
|---|---|
| **LAVERNE COSBY,**<br><br>*Plaintiff,*<br><br>**v.**<br><br>**NEWREZ LLC, *et al.*,**<br><br>***Defendants.*** | **CIVIL ACTION NO.**<br>**5:24-cv-00460-TES** |

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS IN PART**

Plaintiff Laverne Cosby filed a second amended complaint on March 3, 2026, against Defendants Newrez LLC ("Newrez"); Wells Fargo Bank, N.A. as trustee for Option One Mortgage Loan Trust 2001B, Asset-Backed Certificates, Series 2001-B ("Wells Fargo"); Onity Mortgage Corporation, formerly known as PHH Mortgage Corporation ("PHH"); and the Kroger Company ("Kroger").[1] [Doc. 50, p. 1]. In it, Plaintiff asserts claims under the Real Estate Settlement Procedures Act ("RESPA"), the Dodd-Frank Wall Street Reform and Consumer Protection Act ("DFA"), and Georgia

[1] The Court names Defendants here as they name themselves in their motions. *See* [Doc. 54]. Plaintiff named Defendant Newrez as "Newrez, LLC c/o PHH Mortgage Corporation" in her case caption and did not separately name PHH. [Doc. 50, p. 1]. The Court deals with PHH below. Furthermore, Plaintiff's first amended complaint added Fiserv as a Defendant, but her second amended complaint omits Fiserv entirely. Therefore, the Clerk of Court is **DIRECTED** to **TERMINATE** Fiserv as a Defendant.

law. [*Id.* at ¶ 6]; 12 U.S.C. § 2601 et seq. Defendants filed a motion to dismiss, which is ripe for review.[2] [Doc. 54].

**LEGAL STANDARD**

Through Rule 12(b)(6), a defendant may "test the facial sufficiency" of a complaint by way of a motion to dismiss. *Ghee v. Comcast Cable Commc'ns, LLC*, No. 22-12867, 2023 WL 3813503, at *2 (11th Cir. June 5, 2023) (quoting *Brooks v. Blue Cross & Blue Shield*, 116 F.3d 1364, 1368 (11th Cir. 1997)). Such a "motion is an 'assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint still fails as a matter of law to state a claim upon which relief may be granted.'" *Barreth v. Reyes 1, Inc.*, No. 5:19-cv-00320-TES, 2020 WL 4370137, at *2 (M.D. Ga. July 29, 2020) (citation omitted). However, a complaint will survive a Rule 12(b)(6)-based motion if it alleges sufficient factual matter (accepted as true) that states a claim for relief that is plausible on its face. *McCullough v. Finley*, 907 F.3d 1324, 1333 (11th Cir. 2018) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009)).

Whether a complaint states a claim for relief is measured by reference to the pleading standard of Federal Rule of Civil Procedure 8—a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Barreth*,

[2] Kroger filed a motion to dismiss Plaintiff's claims against it, but then Plaintiff and Kroger filed a joint motion to dismiss Kroger and all claims against it. [Doc. 64]; [Doc. 63, p. 2, n.1]; [Doc. 53]. The Court granted the parties' joint motion and dismissed Kroger. [Doc. 67]. The Court then found that Kroger's motion to dismiss was moot in light of Kroger's dismissal. [Doc. 68].

2020 WL 4370137, at *2 (citation omitted). Rule 8 doesn't require detailed factual allegations, but it does require "more than unadorned, the-defendant-unlawfully-harmed-me accusations." *McCullough*, 907 F.3d at 1333 (citation omitted) (alterations adopted). When ruling on a motion under Federal Rule of Civil Procedure 12(b)(6), it is a cardinal rule that district courts must accept the factual allegations set forth in a complaint as true. *Twombly*, 550 U.S. at 572. In accepting the factual allegations as true, courts are to construe the reasonable inferences from them in the light most favorable to a plaintiff. *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998).

Therefore, to decide whether a complaint survives a motion to dismiss, courts use a two-step framework. *McCullough*, 907 F.3d at 1333 (citation omitted). The first step is to identify the allegations that are "no more than conclusions." *Id.* (quoting *Iqbal*, 556 U.S. at 679). "Conclusory allegations are not entitled to the assumption of truth." *Id.* After disregarding the conclusory allegations, the second step is to "assume any remaining factual allegations are true and determine whether those factual allegations 'plausibly give rise to an entitlement to relief.'" *Id.* A plaintiff may use legal conclusions to structure a complaint, but they *must* "be supported by factual allegations." *McCullough*, 907 F.3d at 1333 (quoting *Iqbal*, 556 U.S. at 679). When drafting a complaint, "[a] plaintiff must plead more than labels and conclusions or a formulaic recitation of the elements of a cause of action." *Id.* (quoting *Twombly*, 550 U.S. at 555).

Finally, the issue to be decided when considering a motion to dismiss "is necessarily a limited one." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) *overruled on other grounds by Davis v. Scheuer*, 468 U.S. 183 (1984). The issue is not whether the claimant will ultimately prevail, but "whether the claimant is entitled to offer evidence to support the claims." *Id.* The factual allegations in a complaint "must be enough to raise a right to relief above the speculative level" and cannot "merely create[ ] a suspicion of a legally cognizable right of action." *Twombly*, 550 U.S. at 555. A complaint that tenders "'naked assertions' devoid of 'further factual enhancement'" will not survive against a motion to dismiss. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (cleaned up).

## **FACTUAL BACKGROUND**

Plaintiff is a 76-year-old retired schoolteacher. [Doc. 50, ¶ 53]. She purchased a home in 2001 in Macon, Georgia. [*Id.* at ¶¶ 1, 19–20]. To do so, she took out a loan in favor of Option One Mortgage Corporation. [*Id.* at ¶ 20]. In November of 2001, the loan was assigned from Option One Mortgage Corporation to Wells Fargo and then reassigned in 2008 to Wells Fargo as trustee for Option One Mortgage Loan Trust 2001-B. [*Id.* at ¶¶ 20–21]. As a result, Newrez and PHH began servicing the loan. [*Id.* at ¶ 22]; [Doc. 50-4, p. 5].

More than twenty years passed. In 2022, Plaintiff began to struggle to make her mortgage payments. [Doc. 50, ¶ 23]. PHH sent Plaintiff a letter on October 13, 2022, offering her the option to enroll in a trial period loan modification. [*Id.* at ¶ 24]. Under

that modification, Plaintiff would make three smaller payments of $497.46 in December of 2022, January of 2023, and February of 2023. [*Id.* at ¶ 28]. The opening of the letter stated, specifically:

> Congratulations! The account is approved to enter into a Trial Period Plan under an PHH Mortgage Services Modification Plan. Please read this letter so that the next steps necessary for completion of the modification are understood completely. In order to be considered for a modification, the proposed trial period payments must be completed.
>
> Below, please find important information about the mortgage assistance offer, with additional details on the following pages. However, time is of the essence to accept this offer. A response must be received by 12/01/2022 in order to start this trial modification. This offer will expire, so we must receive a response by the date listed on this letter.
>
> . . .
>
> To accept an assistance option, the following must be completed:
>
> For convenience we have enclosed a Mortgage Assistance Acceptance Form which needs to be completed and RETURNED as outlined on the form by 12/01/2022.
>
> In addition, the First Trial Period Plan payment of $497.46 needs to be made by 12/01/2022.

[Doc. 50-4, p. 2].

Plaintiff filled out and returned the included acceptance form on November 22, 2022. [Doc. 50, ¶ 26]. On December 15, 2022, Plaintiff traveled to Kroger #411 on Presidential Parkway in Macon, Georgia to purchase an electronic money order to make her first payment. [*Id.* at ¶ 32]. She met with a Kroger employee and ordered a $500 payment through the CheckFreePay system. [*Id.* at ¶ 33]. Plaintiff provided the employee with a post-it note containing her account number and $520 in cash. [*Id.* at ¶¶

34–35]. The Kroger employee input the information into the system but entered the first three digits of Plaintiff's account number as 714 instead of 741. [*Id.* at ¶¶ 36–37].

Newrez rejected the payment and transferred it back to CheckFreePay. [*Id.* at ¶¶ 38–39]. Plaintiff never received correspondence regarding the payment's rejection or a refund from CheckFreePay or Kroger. [*Id.* at ¶ 40]. Newrez then conducted the foreclosure sale on Plaintiff's home on January 3, 2023. [*Id.* at ¶ 43]. Plaintiff made two additional payments in January and February of 2023, but they were returned because the home had already been sold. [*Id.*]. Plaintiff sent PHH letters stating that she thought the foreclosure was improper. [*Id.* at ¶ 45]; [Doc. 50-8]. PHH responded to the first letter, in part:

> On November 2, 2022, PHH initiated foreclosure because the account was past due for the February 1, 2022, payment. The account was approved a trial modification plan with three monthly trial payments of $497.46 starting December 1, 2022.
> We did not receive the first trial plan payment of $497.46 on December 1, 2022. Therefore, the foreclosure sale was completed on January 3, 2023, and the property was sold to a third party.

[Doc. 50-9, p. 2]. In response to her second letter, PHH stated that, "[p]ursuant to your communication, we reviewed the payment receipt and found that the payments were submitted via electronic bill payments . . . The payments were returned to the remitter as follows, $500.00 received on December 16, 2022, returned electronically as it was submitted with the wrong loan number . . . ."[Doc. 50-10, p. 2]. Plaintiff was ultimately evicted. [Doc. 50, ¶ 49].

## DISCUSSION

As an initial jurisdictional issue, PHH moves the Court to dismiss it for insufficiency of process and insufficient service of process. [Doc. 54, p. 1]. Plaintiff argues that her second amended complaint "names 'Newrez, LLC c/o PHH Mortgage Corporation' because PHH services loans on behalf of Newrez." [Doc. 63, p. 19]. Therefore, according to Plaintiff, "[s]ervice upon Newrez c/o PHH is sufficient to provide notice to PHH." [*Id.*]. She also argues that, if service was improper, the remedy "is to quash service and allow Plaintiff to re-serve, not dismiss the complaint." [*Id.*]. In response, PHH argues that "notice is not service." [Doc. 65, p. 11].

"Service of process is a jurisdictional requirement: a court lacks jurisdiction over the person of a defendant when that defendant has not been served." *Hemispherx Biopharma, Inc. v. Johannesburg Consol. Invs.*, 553 F.3d 1351, 1360 (11th Cir. 2008) (quotations omitted). Federal Rule of Civil Procedure 4 provides that service of process shall be effectuated by serving a defendant with summons and the complaint, and the plaintiff is responsible for service. Fed. R. Civ. P. 4(c). Therefore, "[w]hen a defendant challenges service of process, the plaintiff bears the burden of establishing its validity." *Garvich v. Georgia*, No. 21-10679, 2022 WL 1531701, at *1 (11th Cir. May 16, 2022) (citing *Aetna Bus. Credit, Inc. v. Universal Décor & Interior Design, Inc.*, 635 F.2d 434, 435 (5th Cir. 1981)). Importantly, "[a] defendant's actual notice is not sufficient to cure defectively executed service." *Albra v. Advan, Inc.*, 490 F.3d 826, 829 (11th Cir. 2007).

Rule 4 also provides a time limitation for service. "If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m). The only exception to this requirement is if the plaintiff can show good cause for the failure. *Id.*

Plaintiff has not shown good cause. PHH may service loans for Newrez, but even Plaintiff's second amended complaint acknowledges that PHH and Newrez are separate corporate entities and are headquartered in different states. [Doc. 50, ¶¶ 2–3]. There is no summons on the docket for PHH, nor did Plaintiff argue that she attempted to serve PHH other than by notice through Newrez, despite Defendants making this argument in response to both of Plaintiff's prior complaints. [Doc. 63, p. 19]; [Doc. 13, p. 1]; [Doc. 34, p. 1]. Since Plaintiff has not shown good cause, the Court must, under Rule 4(m), either dismiss PHH without prejudice or order that service be made within a specified time. Fed. R. Civ. P. 4(m). The Court **DISMISSES** PHH without prejudice.

Now the Court turns to the remaining Defendants' arguments for dismissal. Plaintiff brings five claims against the remaining Defendants. First, Plaintiff brings a claim against Newrez (and PHH, now dismissed) for violation of RESPA as implemented through Regulation X. 12 U.S.C. § 2601 et seq. (RESPA); 12 C.F.R. § 1024.1 (Regulation X). Newrez argues that Plaintiff's claim fails because she did not submit a "complete loss mitigation application." [Doc. 54, p. 8].

A borrower can enforce Regulation X through the provisions of § 6(f) of RESPA. *See* 12 U.S.C. § 2605(f) (creating a private right of action for a borrower to sue "[w]hoever fails to comply with any provision of this section"); *see also* 12 C.F.R. § 1024.41(a) ("A borrower may enforce the provisions of this section pursuant to [§] 6(f) of RESPA (12 U.S.C. [§] 2605(f))."). Under RESPA and Regulation X, if a borrower timely "submits a complete loss mitigation application," then the servicer "shall not make the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process . . . ." 12 C.F.R. § 1024.41(f)(2). Plaintiff calls this RESPA's "dual tracking" protection. [Doc. 50, p. 13]. RESPA's dual-tracking protection applies after the borrower submits a complete loss mitigation application. 12 C.F.R. § 1024.41(f)(2) ("If a borrower submits a complete loss mitigation application . . . a servicer shall not . . . ."); *see also* § 1024.41(g).

A complete loss mitigation application is "an application in connection with which a servicer has received all the information that the servicer requires from a borrower in evaluating applications for the loss mitigation options available to the borrower." 12 C.F.R. § 1024.41(b)(1). A loss mitigation option is "an alternative to foreclosure offered by the owner or assignee of a mortgage loan that is made available through the servicer to the borrower." 12 C.F.R. § 1024.31. Importantly, the official bureau interpretation of § 1024.41 shows that a servicer does not have to wait for a loss

mitigation application to offer a borrower a loss mitigation option.[3] 12 C.F.R. pt. 1024, supp. I, § 41(c)(2)(i)(1) ("Nothing in § 1024.41(c)(2)(i) prohibits a servicer from offering loss mitigation options to a borrower who has not submitted a loss mitigation application").

Plaintiff does not allege that she submitted a loss mitigation application before she received the Trial Period Plan offer. Instead, she alleges that PHH sent her the offer after she had been struggling to make her mortgage payments. [Doc. 50, ¶¶ 23–24]. Her only alleged complete loss mitigation application was the acceptance form she returned on November 22, 2022. [*Id.* at ¶ 61]. She alleges, specifically, that "Plaintiff submitted a complete loss mitigation application on November 22, 2022, more than 37 days before the foreclosure sale held on January 3, 2023, as Plaintiff's Acceptance Letter constituted all necessary information necessary to enable PHH and Newrez to evaluate Plaintiff for a loan modification." [*Id.*].

However, the Court is not required to accept Plaintiff's legal conclusion that her attempted acceptance of Defendants' offer constituted a complete loss mitigation

[3] The official bureau interpretation "is the primary vehicle by which the Bureau of Consumer Financial Protection issues official interpretations of Regulation X," and compliance with it "affords protection from liability under" RESPA. 12 C.F.R. pt. 1024, supp. I, § 1.

application.[4] *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010). With that said, Plaintiff supported this legal conclusion with a factual allegation: her acceptance letter "constituted all necessary information necessary to enable PHH and Newrez to evaluate Plaintiff for a loan modification." [Doc. 50, ¶ 61]. This allegation comes close to merely reciting the definition of a complete loss mitigation application. *Compare* [*id.*] *with* 12 C.F.R. § 1024.41(b)(1) ("an application in connection with a servicer has received all the information that the servicer requires from a borrower . . . ."). But close is not enough to make Plaintiff's claim fail at this stage.

Defendants make several arguments in opposition that might have been sufficient to carry the day at summary judgment. *See, e.g.*, [Doc. 54, pp. 9–10 (arguing that the acceptance form is not an application or request for anything, but instead an acceptance of an already-proffered offer)]; *see also* 12 C.F.R. § 1024.41(b)(1); 12 C.F.R. pt. 1024, supp. I, § 41(b)(1)(1) (stating that a "servicer has flexibility to establish its own application requirements and to decide the type and amount of information it will require from borrowers applying for loss mitigation options."). However, the Court

---

[4] To be clear, while Plaintiff's allegation that she submitted her acceptance letter on November 22, 2022, *is* a factual allegation the Court accepts as true, *Twombly*, 550 U.S. at 555–56, she cannot classify her submission as a complete loss mitigation application as a fact. A complete loss mitigation application is a legal term of art under RESPA and Regulation X, and Plaintiff cannot plead that as a factual allegation. So, the Court accepts as true that Plaintiff submitted the acceptance form on November 22, 2022, but the Court is not bound to accept that the acceptance form constituted a complete loss mitigation application as defined under 12 C.F.R. §§ 1024.41(b) and 1024.31. *McCullough*, 907 F.3d at 1333 (must plead more than a formulaic recitation of the elements of a cause of action) (quoting *Twombly*, 550 U.S. at 555).

must accept Plaintiff's allegation as true at this stage. Plaintiff's RESPA claim survives Defendants' motion to dismiss.

Second, Plaintiff brings a breach of contract claim against Wells Fargo, alleging that Wells Fargo breached a contract that its alleged agent, PHH, made with Plaintiff. [Doc. 50, pp. 17–18]. Under Georgia law, a "definite offer and complete acceptance, for consideration, create a binding contract." *Moreno v. Strickland*, 567 S.E.2d 90, 92 (Ga. Ct. App. 2002); *see also State v. Fed. Def. Program, Inc.*, 882 S.E.2d 257, 271 (Ga. 2022) (citing *Moreno*, 567 S.E.2d at 92). Here, there was an offer via the letter from Newrez and PHH. Defendants attached the complete offer letter and its accompanying documents ("Offer") to their response, and Plaintiff did not dispute their authenticity. Therefore, the Court may consider the entire Offer at this stage. *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005).

Whether there was acceptance of Defendants' Offer is less clear. Here is everything the Offer said about acceptance:

> A response must be received by 12/01/2022 in order to start this trial modification.
> . . .
> To accept an assistance option, the following must be completed:
> For convenience we have enclosed a Mortgage Assistance Acceptance Form which needs to be completed and RETURNED as outlined on the form by 12/01/2022.
> *In addition*, the First Trial Period Plan payment of $497.46 needs to be made by 12/01/2022.
> . . .
> If we are contacted and the offer is accepted, but there is subsequent failure to make the first Trial Period Plan payment by the first payment due date,

> and we do not receive the payment by the last day of the month in which it is due, *this offer will be revoked* . . . .
> . . .
> Meaning of acceptance of this trial offer:
> It is agreed the Trial Period Plan is not a modification of the account and the account will not be modified unless or until *all of the conditions* required for modification are fully met.
> . . .
> You have until 12/01/2022 to accept this offer. *You must accept by making the first Trial Period Plan payment* by 12/01/2022.

[Doc. 5-4, pp. 2–4] (emphasis added). The Court finds that the requirement to actually make the first payment was a condition precedent that had to be satisfied before the contract became enforceable.[5] Plaintiff did not make the payment, so her breach of contract claim necessarily fails.

Still, Plaintiff argues that she accepted the offer and formed a contract because she substantially performed its acceptance terms. [Doc. 50, ¶ 79]. Namely, she made the

---

[5] The Court pauses to make two notes. First, "[a] condition precedent must be performed before the contract becomes absolute and obligatory upon the other party." O.C.G.A. § 13-3-4. Georgia law "disfavors conditions precedent in interpreting contracts and requires 'language such as "on condition that," "if," and "provided," or by explicit statements that certain events are to be construed as conditions precedent.'" *Tinker v. Savilli*, No. 1:24-cv-2869-MHC, 2025 WL 1914895, at *9 (N.D. Ga. Mar. 14, 2025) (quoting *Choate Const. Co. v. Ideal Elec. Contractors, Inc.*, 541 S.E.2d 435, 438 (Ga. Ct. App. 2000)). The language that makes it a condition precedent is: "*If* we are contacted and the offer is accepted . . ." [Doc. 54-1, p. 3 (emphasis added)].

Second, even if Plaintiff's argument regarding ambiguity was true, her claim would still fail. Plaintiff argued the Offer was ambiguous as to the first payment deadline. [Doc. 63, p. 10]. Assuming that to be true, that would make her first payment due on or before December 31, 2022. *Grange Mut. Cas. Co. v. Woodard*, 861 F.3d 1224, 1231 (11th Cir. 2017) ("Ambiguities are construed against the contract's drafter.") (citing *Auto-Owners Ins. Co. v. Neisler*, 779 S.E.2d 55, 59 (Ga. Ct. App. 2015)). And, that would then make Plaintiff's return of the acceptance form alone sufficient to create a contract. But again, Plaintiff cannot prevail because even granting her those arguments, the making of the first payment remains a condition precedent that she did not meet. In other words, Plaintiff's making of the first payment triggered the Offer's protections against foreclosure. But she didn't make that payment (even though she clearly tried), so the protections do not apply even with her preferred extended payment deadline.

payment, but with a typographical error in the account number. [*Id.* at ¶ 78]. While it is undoubtedly frustrating to take the necessary steps to avoid foreclosure only to fall short by a clerical error, Plaintiff has provided no caselaw, and the Court can find none, which allows substantial performance to form a contract in Georgia under these circumstances. The Offer required payment, and Plaintiff did not successfully pay.

Plaintiff also argues as part of her breach of contract claim that PHH's rejection of her attempted first payment made acceptance of the offer impossible. [*Id.* at ¶ 81]; [Doc. 63, p. 11]. She says that "PHH was able to identify that the payment came from CheckFreePay and was directed to PHH," but instead of "exercising reasonable diligence to identify the borrower and apply the payment, PHH summarily rejected it and never notified Cosby." [Doc. 63, p. 11]. Defendants point to the Offer's "Payment Remittance Information" page, which states, "**PLEASE DON'T FORGET:** . . . [a]lways include the account number with the payment," and then lists her account number four times with four different payment methods. [Doc. 54-1, p. 11]. They argue that "Plaintiff cannot blame Defendants for breach of contract for failing to accept a payment that did not comply with the requirements of the very contract Plaintiff alleges that Defendants breached." [Doc. 65, p. 7 (citing O.C.G.A. § 13-4-23)].

Accepting Plaintiff's allegations as true, Defendants PHH/Newrez received the payment, but rejected it because the loan number in the payment did not match an

existing PHH/Newrez loan number.[6] [Doc. 50, ¶ 39]. Yet rejecting one payment does not make acceptance via payment impossible because it does not foreclose other, correct payments. After all, the Offer contained very specific instructions about Plaintiff's account number. Plaintiff could have checked the account number on the receipt, realized the mistake, and taken steps to rectify it. Kroger or CheckFreePay could have also notified her that PHH had rejected the payment, allowing her to try again. The fact that Kroger or CheckFreePay failed to notify Plaintiff of PHH's rejection does not place liability on PHH, and Wells Fargo by extension, for the rejection. Plaintiff's breach of contract claim fails.

Third, Plaintiff brings a claim against Defendants Newrez and Wells Fargo for wrongful foreclosure.[7] In Georgia, "[t]he elements of a claim of wrongful foreclosure are 'a legal duty owed to the plaintiff by the foreclosing party, a breach of that duty, a causal connection between the breach of that duty and the injury the plaintiff sustained,

---

[6] Plaintiff also alleges that "PHH knew or should have known that the payment was for Plaintiff's account . . . ." [Doc. 50, ¶ 82]. She offers PHH's letters as support. [*Id.*]. At the motion to dismiss stage, Courts may consider documents attached to the complaint, and "when exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern." *Crenshaw v. Lister*, 556 F.3d 1283, 1291 (11th Cir. 2009). PHH's letters show that it learned that the rejected payment was for Plaintiff's account through its later correspondences with Plaintiff. [Doc. 50-9, p. 2 ("We are unable to locate the payment of $512.00 mentioned in your communication with the proof you provided, and the receipt does not indicate that the payment was sent to PHH. Please send proof of the payment or application instructions . . . .")]; [Doc. 50-10, p. 2 ("*Pursuant to your communication*, we reviewed the payment receipt and found that the payments were submitted via electronic bill payments and were not wired as stated in your communication. The payments were returned to the remitter . . . as it was submitted with the wrong loan number . . . .") (emphasis added)].

[7] This claim was also originally against PHH.

and damages.'" *Stewart v. Suntrust Mortg., Inc.*, 770 S.E.2d 892, 896 (Ga. Ct. App. 2015) (quoting *Heritage Creek Dev. Corp. v. Colonial Bank*, 601 S.E.2d 842, 844 (Ga. Ct. App. 2004)) (alterations accepted). Defendants argue that Plaintiff's claim should be dismissed because she has not established a legal duty that Defendants breached.

Plaintiff alleges that "Defendant[s Wells Fargo], Newrez and PHH owed a duty to Plaintiff to cease foreclosure proceedings in accordance with the contract between Plaintiff and PHH beginning on November 22, 2022, the date Plaintiff accepted the mortgage modification in accordance with the [Offer]."[8] [Doc. 50, ¶ 89]. However, as explained above, without successful payment, the Offer never created an enforceable duty. Therefore, Plaintiff's wrongful foreclosure claim fails.

Fourth, Plaintiff brings a claim against Defendants Newrez and Wells Fargo for intentional infliction of emotional distress.[9] [Doc. 50, p. 21]. To state a claim for intentional infliction of emotional distress under Georgia law, Plaintiff must show the following elements: "(1) defendant[s'] conduct was intentional or reckless; (2) defendant[s'] conduct was extreme and outrageous; (3) a causal connection existed

---

[8] Plaintiff specifies that the duty does not come from the security deed itself, but instead only from the Offer. [Doc. 63, p. 14].

[9] Plaintiff's complaint cites the bankruptcy code for her intentional infliction of emotional distress claim. [Doc. 50, ¶ 98 (citing 11 U.S.C. § 362(k)(1))]. That section obviously is not applicable here. § 362(k)(1) ("an individual injured by any willful violation of a stay provided by this section . . . may recover punitive damages."). In her response, Plaintiff cites Georgia law. [Doc. 63, p. 16]. The Court presumes Plaintiff brings her claim under Georgia law rather than the inapplicable bankruptcy code. To the extent she did intend to bring a claim under the bankruptcy code, the Court **GRANTS** Defendants' motion to dismiss, as there was no stay here under § 362. To the extent she intended to file her claim under state law, the Court continues with its analysis.

between the wrongful conduct and the emotional distress; and (4) the emotional harm was severe." *Terry v. Wells Fargo Bank, N.A.*, No. CV 326-011, 2026 WL 2100183, at *2 (S.D. Ga. July 21, 2026) (quoting *Jefferson v. Houston Hosps., Inc.*, 784 S.E.2d 837, 843 (Ga. Ct. App. 2016)). The conduct must also be "directed" at Plaintiff. *Reece v. Chestatee State Bank*, 579 S.E.2d 11, 16 (Ga. Ct. App. 2003). She cannot show that Defendants' conduct was directed at her. Plaintiff argues that Defendants' conduct was directed at her because "PHH ultimately identified the payment and returned it—demonstrating that PHH had the ability to trace the payment's origin." [Doc. 63, p. 17]. Moreover, "PHH had [her] complete loan file, knew she had accepted the [temporary payment plan] just weeks earlier, and knew payment was due by December 31." [*Id.*].

PHH might have had the resources and ability to trace the payment's origin to Kroger, but nothing on the record, including Plaintiff's allegations, shows that PHH knew that the payment belonged to Plaintiff when it rejected it. *See supra* note 6; *see also* [Doc. 50, ¶ 39 (stating that PHH/Newrez realized the loan number did not match an existing loan number and returned the payment to CheckFree)]. Even if PHH's conduct was directed at Plaintiff, it does not "go beyond all reasonable bounds of decency so as to be regarded as atrocious and utterly intolerable in a civilized community" *Kin Chung Chung v. JPMorgan Chase Bank, N.A.*, 975 F. Supp. 2d 1333, 1350 (N.D. Ga. 2013) (quoting *United Parcel Service v. Moore*, 519 S.E.2d 15, 16 (Ga. Ct. App. 1999)). Sending someone, even a 72-year-old, a temporary payment assistance plan when they are struggling to

make mortgage payments and then foreclosing on the house when the requirements of that plan are not met does not go beyond all reasonable bounds of decency.

Fifth, Plaintiff's complaint contains a "count" for punitive damages. Since punitive damages are a remedy and not an independent cause of action, and at least one of Plaintiff's substantive claims survives, the Court will not address them at this stage.

Accordingly, the Court **GRANTS** Defendants' motion to dismiss **in part**. [Doc. 54]. Plaintiff's RESPA claim survives. Her remaining claims are **DISMISSED**.

**SO ORDERED**, this 27th day of October, 2026.

S/ Tilman E. Self, III
**TILMAN E. SELF, III, JUDGE**
**UNITED STATES DISTRICT COURT**